**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| JAMES W. MCGLOTHLIN, | ) | |
| | ) | No. 9:18-cv-00246 |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| KEVIN N. HENNELLY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the court on Kevin Hennelly's ("Hennelly") motion to dismiss for failure to state a claim, ECF No. 29. The court grants in part and denies in part the motion to dismiss.

## I.  BACKGROUND

This matter arises from an action of alleged defamation and libel brought by James McGlothlin ("McGlothlin") against Hennelly. McGlothlin is a founding member of The United Company, which is the parent company of Scratch Golf, LLC, a South Carolina corporation. Hennelly lives in Beaufort County, South Carolina. Scratch Golf owns Hilton Head National Golf Course (the "Property") in Beaufort County, South Carolina. In July 2016, Scratch Golf submitted an application to Beaufort County to amend the rezoning of the Property ("Rezoning Application"). On May 22, 2017, the Beaufort County Council denied the Rezoning Application.

McGlothlin alleges that Hennelly made three separate posts on Facebook and on the website of the Island Packet, a local newspaper, that contained various defamatory statements about him, in an effort to imply that McGlothlin is corrupt or may have committed crimes. McGlothlin attached images of those statements to his complaint.

1

For the most part, these statements relate to the Rezoning Application. Those posts and their statements are below.

<u>Internet Comment 1</u>

May 12, 2017 post by Hennelly on his own Facebook Page, ECF No. 1-1 ("May 12 Facebook Post")

Statement: "A little something the Island Packet overlooked"

The May 12 Facebook Post included a link to this Washington Post article ("Washington Post Article"): *Virginia governor's wife was paid $36,000 as consultant to coal: How Robert McDonnell reported role affected what he had to disclose on annual financial reforms.*

<u>Internet Comment 2</u>

May 14, 2017 comment on the online version of a May 12 article from The Island Packet newspaper ("Island Packet Article"), ECF No. 1-2, *Hilton Head National developers: Why golf lost its swing there and what the future holds* ("Island Packet Comment")

Statement:  It looks like they left out a few pertinent facts.  The most glaring is the corrupt people involved.  This guy Kent was Chief of Staff to the corrupt Governor of Virginia. He has never built a swing set never mind a 300m dollar City! James Woodrow McGlothlin gave the corrupt Governor McDonald of Virginia wife a "no show" job.  The McDonalds never reported income, $36,000.  These guys are crony capitalists and will break every rule in the book to get a government favor or handout.  Let's vote NO to zoning change and send these carpetbaggers packing.  Let's tell them loud and clear our elected officials are not for sale and are above reproach.

<u>Internet Comment 3</u>

May 23, 2017 post by Hennelly on his own Facebook page, ECF No. 1-3 ("May 23 Facebook Post")

Statement:  A few final observations. This was never about a project; there is no project.  This is about a request for zoning change for the sole purpose to quadruple the value of the land.  The crooked owners wanted a government handout and not give anything in return.  This is Crony Capitalism.  I hope it is clear to these crooks from Virginia this will not fly in Beaufort County. It is sad that Brian Flewelling believes public input is external drama and distracts from the process.  Brian you are wrong.

Chairman Paul Summerville did an excellent job from the beginning providing a fully transparent process and bent over backwards to hear all public comment, thanks Paul. We saw how the board should function and should demand the same from Beaufort County school Board. Tabor Vaux did an excellent job and proved himself a leader in our community. He tried to get a development agreement but wisely. The Island Packet gets an "incomplete" grade on their coverage of the issue. For some reason the refused to print the documented corruption of the owners of the United Company. Martin Kent and James McGlothlin were up to their eyeballs in the recent scandals in Virginia with the Governor and his wife. McGlothlin gave the Governors wife a no show job at the heart of the ethical and criminal activity Beaufort County and Bluffton residents; you rock. What an outpouring of opposition. Over 3700 people signed the petition. Proud to live in the community with informed involved residents. Last, hats off to Collins Doughtie, you gave so much to our community …

McGlothlin first sued Hennelly in the Middle District of Florida (the "Florida Suit"). Hennelly responded by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and (3), based on lack of personal jurisdiction and improper venue. McGlothlin opposed this motion, and the court found that the Florida Long Arm Statute did not confer jurisdiction over non-resident Hennelly. The court granted the motion to dismiss but gave McGlothlin two weeks to amend his complaint. McGlothlin chose to voluntarily dismiss the Florida Suit two weeks later.

McGlothlin filed suit in this district on January 30, 2018, based the same facts. The complaint brings causes of action for defamation and negligence/ gross negligence/ recklessness, and requests injunctive relief. McGlothlin asks for actual and punitive damages of an amount in excess of $75,000. McGlothlin also asks the court to enjoin Hennelly from making or publishing any other false, defamatory, and/or libelous statements as to McGlothlin, and to order him to remove all information and statements he has already disseminated. Hennelly filed a motion to stay action and award fees under

Federal Rule of Civil Procedure 41(d) on February 15, 2018, ECF No. 6, which the court denied.

On November 16, 2018, Hennelly filed a motion to dismiss for failure to state a claim. ECF No. 29. On December 10, 2018, McGlothlin filed his response in opposition, ECF No. 32, and on January 8, 2019, Hennelly filed his response, ECF No. 35. The court held a hearing on the motion to dismiss on January 31, 2019.[1] The motion to dismiss has been fully briefed and is ripe for the court's review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134.

---

[1] The court would like to acknowledge S. Luke Morgan, a third-year law student at Duke University School of Law, who skillfully argued this motion on behalf of Hennelly. The court wishes him well as he concludes his study of law and embarks upon what promises to be a successful career.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III.  DISCUSSION

In deciding upon this motion to dismiss, the court must consider whether McGlothlin has sufficiently alleged facts upon which he could sustain a successful defamation action.  This analysis requires the balancing of principles from both South Carolina common law and the United States Constitution.  Even if McGlothlin has sufficiently alleged the elements of a defamation cause of action under South Carolina law, his claims may still be thwarted by First Amendment protection of certain kinds of speech.  The court considers each in turn.

### A.  South Carolina Defamation Claim

Defamation claims can be brought for either libel or slander.  Parrish v. Allison, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007).  "Libel is the publication of defamatory material by written or printed words," while slander is "spoken defamation." Id.  To bring a successful claim for defamation, a plaintiff must prove: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement regardless of special harm or the publication of the statement caused special

harm." Kunst v. Loree, 817 S.E.2d 295, 302 (S.C. Ct. App. 2018), reh'g denied (Aug. 16, 2018).

Regarding the first element, if there is any dispute regarding the truth of the defamatory statement, it is a question for the jury to determine. Weir v. Citicorp Nat'l Servs., Inc., 435 S.E.2d 864, 867 (S.C. 1993). "The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Fleming v. Rose, 567 S.E.2d 857, 860 (S.C. 2002). Defamatory statements are either defamatory per se or defamatory per quod. Parrish, 656 S.E.2d at 388. A statement is defamatory per se if its defamatory meaning is clear from the statement standing alone; if the reader of the statement must know additional facts or circumstances outside of the statement in order to understand its defamatory nature, then the statement is defamatory per quod. Id. "In cases involving defamation per quod, the plaintiff must introduce facts extrinsic to the statement itself in order to prove a defamatory meaning." Holtzscheiter v. Thomson Newspapers, Inc, 506 S.E.2d 497, 509 (S.C. 1998). "If the question is one on which reasonable minds might differ, then it is for the jury to determine which of the two permissible views they will take." Id. However, the court may consider evidence of "extrinsic facts and circumstances" in determining whether to submit the issue to the jury.[2] Id.

Under the fourth element, the plaintiff must either prove that he suffered special harm from the allegedly defamatory statement or demonstrate that the statement is

---

[2] Of course, here the court may only consider facts alleged in the complaint and the documents attached to the complaint or incorporated by reference in the complaint.

otherwise "actionable." Defamation is actionable per se[3] when the statements impute the plaintiff with one of the following acts or characteristics: "(1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." Goodwin v. Kennedy, 552 S.E.2d 319, 322–23 (S.C. Ct. App. 2001). When a statement falls into one of these categories and is thus actionable per se, the court presumes that the defendant acted with common law malice and that general damages are present. Fountain v. First Reliance Bank, 730 S.E.2d 305, 309 (S.C. 2012). Additionally, "[l]ibel is almost always actionable per se." Jackson v. Denmark Tech. Coll., 2018 WL 3729743, at 5 (D.S.C. Aug. 6, 2018); see Erickson v. Jones St. Publishers, LLC, 629 S.E.2d 653, 664 (S.C. 2006) ("Essentially, all libel is actionable per se, while only certain categories of slander are actionable per se."); Holtzscheiter II, 506 S.E.2d at 502 ("Libel is actionable per se if it involves written or printed words which tend to . . . reduce his character or reputation in the estimation of his friends or acquaintances, or the public . . . ."). "Whether the statement is actionable per se is a matter of law for the court to resolve." Fountain, 70 S.E.2d at 309.

Applying this standard to McGlothlin's complaint, and assuming all of the facts alleged therein to be true, the court considers whether he has sufficiently alleged these elements to survive a motion to dismiss under South Carolina defamation law pending the First Amendment limitations discussed in Section III.B. In regards to the first factor, McGlothlin has claimed that Henelly's online comments were false and defamatory. On May 12, 2017, Hennelly posted on his Facebook page a link to the Washington Post Article, including the statement "a little something the Island Packet overlooked." May

---

[3] Actionability per se is distinct from the concept of defamation per se v. defamation per quod.

12 Facebook Post, ECF No. 1-1.  McGlothlin claims that this was done "in an effort to imply that [McGlothlin] is corrupt or may have committed crimes that constitute a felony, and in order to impugn [his] character publicly."  ECF No. 1 ¶ 9.  However, McGlothlin has not alleged that either the contents of the Washington Post Article or Hennelly's statement that the Island Packet overlooked this article were false.  Even if McGlothlin did allege the falsity of the Washington Post Article, Hennelly could not be held liable for reposting an article that was not even published by him but by a newspaper.  Thus, the court finds that McGlothlin may not base his defamation claims on the May 12 Facebook Post.

The court next considers the May 23 Facebook Post.  McGlothlin alleges that Hennelly published the following false and defamatory statements about him on Facebook: (1) McGlothlin is a "Crony Capitalist" and a "crook" (appears in both the Island Packet Comment and the May 23 Facebook Post); (2) McGlothlin gave the corrupt Governor McDonald of Virginia['s] wife a "no show" job (appears in both the Island Packet Comment and the May 23 Facebook Post); (3) McGlothlin is a "crooked owner" seeking a government handout (appears only in the May 23 Facebook Post); and (4) that McGlothlin, as an owner/operator of United, engaged in documented corruption, relating to a highly-publicized scandal involving the Governor of Virginia and his wife (appears in both the Island Packet Comment and the May 23 Facebook Post).  ECF No. 1 ¶ 14.

Turning to the Island Packet Comment, the Island Packet Article itself discusses how McGlothlin built many golf courses over the last thirty years and references the efforts of McGlothlin's company to redevelop Hilton Head National Golf Club.  In the comment section below the web version of the Island Packet Article, Hennelly wrote that

"McGlothlin gave the corrupt Governor McDonald of Virginia['s] wife a 'no show' job" and refers to McGlothlin and others as "crony capitalists." ECF No. 1-2. McGlothlin does not specifically allege in his complaint that any of these statements in the Island Packet Comment are false and defamatory. Rather, the only statements that he explicitly claims to be false and defamatory are those "made and published on Facebook," which are enumerated in the preceding paragraph.[4] ECF No. 1 ¶ 14. However, because most of these statements in the May 23 Facebook Post—which McGlothlin has explicitly identified as false and defamatory in paragraph 14 of his complaint—also appear in the Island Packet Comment, the court will construe the complaint as alleging that these statements in the Island Packet Comment are false and defamatory as well. Thus, the court finds that McGlothlin has sufficiently alleged that Hennelly made four false and defamatory statements.

Second, the complaint sufficiently alleges that Hennelly's statements constitutes an unprivileged publication to a third party. ECF No. 1 ¶ 18.

Third, the complaint sufficiently alleges that Hennelly is at fault for "publishing" these statements. Id. ¶ 20.

Finally, the court must consider whether McGlothlin has sufficiently alleged that Hennelly's Island Packet Comment and May 23 Facebook Post caused him special harm,

---

[4]      Under the sections of the complaint listing his causes of action, McGlothlin alleges generally that Hennelly's "statements about [McGlothlin] were false and defamatory." The court finds that these vague conclusions fail to specify which of the statements within the various online posts are alleged by McGlothlin to be false. Surely he does not presume that the court will construe every sentence in the online posts as false—for example, that "Chairman Paul Summerville did an excellent job" or that "Beaufort County and Bluffton residents; you rock." The only place that McGlothlin has provided guidance regarding which statements he contends to be both false and defamatory is in paragraph 14 of the complaint. As such, the court construes those as the only allegedly false and defamatory statements that are at play here.

or that the statements are actionable per se, regardless of special harm. South Carolina courts have found that "essentially, all libel is actionable per se." Holtzscheiter II, at 502. Thus, as Hennelly's allegedly defamatory statements were written libel, and are therefore actionable per se, the court finds that McGlothlin has sufficiently pleaded the final factor of South Carolina's defamation cause of action. If the court were to stop at this point, it would deny the motion to dismiss and find that McGlothlin need not plead special damages. Yet the court must first consider what limitations the First Amendment's right to free speech places on the reach of McGlothlin's defamation suit against Hennelly.

**B. First Amendment Limitations on Defamation Claims**

Although a plaintiff might be able to prove all of the elements of South Carolina common law defamation, his claims might still be circumscribed by the First Amendment protections of free speech. The court first analyzes McGlothlin's claims under the framework established by the Supreme Court for suits brought by both public and private figures against defendants who have made opinion statements on matters of public concern. Next, the court considers whether any of Hennelly's allegedly defamatory statements are inactionable due to their rhetorical nature or because they are, as Hennelly argues, opinions based on disclosed facts.

**i. Public-versus-Private Figure Plaintiffs on Matters of Public Concern**

In 1964, the Supreme Court found that, in order for a public official to recover damages for a defamatory and false statement related to his official conduct, he must prove that the statement was made with actual malice. New York Times Co. v. Sullivan, 376 U.S. 254, 279 (1964). The Court defined actual malice as knowledge or reckless disregard towards the falsity of the statement. Id. The Court has spent several decades

articulating the reach of the <u>New York Times</u> standard. The Court first extended the <u>New York Times</u> standard to cases involving defamation of "public figures," in addition to public officials. <u>Curtis Publishing Co. v. Butts</u>, 388 U.S. 130 (1967). Next, the court considered whether the <u>New York Times</u> test should apply to suits brought by private persons regarding defamatory statements on matters of public interest. <u>See</u> <u>Rosenbloom v. Metrodedia, Inc.</u>, 403 U.S. 29 (1971), <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323 (1974), <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1 (1990). The Court summarized this progress on the interplay between defamation suits and the First Amendment in <u>Milkovich</u>, focusing on the need to protect people's freedom to share opinions on matters of public interest:

> Next, the <u>Bresler–Letter Carriers–Falwell</u> line of cases provides protection for statements that cannot "reasonably [be] interpreted as stating actual facts" about an individual. [ ] This provides assurance that public debate will not suffer for lack of "imaginative expression" or the "rhetorical hyperbole" which has traditionally added much to the discourse of our Nation. [ ] The <u>New York Times–Butts–Gertz</u> culpability requirements further ensure that debate on public issues remains "uninhibited, robust, and wide-open." [ ] Thus, where a statement of "<u>opinion</u>" on a matter [ ]of <u>public concern</u> reasonably implies false and defamatory facts regarding <u>public figures or officials</u>, those individuals must show that such statements were made with <u>knowledge of their false implications</u> or with <u>reckless disregard of their truth</u>. Similarly, where such a statement involves a <u>private figure</u> on a matter of <u>public concern</u>, a plaintiff must show that the false connotations were made with <u>some level of</u> fault [ ]as required by <u>Gertz</u>.

<u>Milkovich</u>, 497 U.S. at 20–21 (emphasis added). These standards apply equally to cases involving statements made by private individuals as they do to cases involving media defendants. <u>Snyder v. Phelps</u>, 580 F.3d 206, 220 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011). According to the Fourth Circuit in <u>Snyder</u>:

> Neither the Supreme Court nor this Court has specifically addressed the question of whether the constitutional protections afforded to statements

not provably false should apply with equal force to both media and nonmedia defendants. See Milkovich, 497 U.S. at 20 n. 6, 110 S.Ct. 2695. The Second and Eighth Circuits, however, have rejected any media/nonmedia distinction. See Flamm v. Am. Ass'n of Univ. Women, 201 F.3d 144, 149 (2d Cir. 2000); In re IBP Confidential Bus. Documents Litig., 797 F.2d 632, 642 (8th Cir. 1986); see also Foretich v. Capital Cities/ABC, Inc., 37 F.3d 1541, 1563 n. 39 (4th Cir. 1994) (implying in dicta that Milkovich applies equally to media and nonmedia defendants). Like those two circuits, we believe that the First Amendment protects nonmedia speech on matters of public concern that does not contain provably false factual assertions. Any effort to justify a media/nonmedia distinction rests on unstable ground, given the difficulty of defining with precision who belongs to the "media." And, more importantly, the Supreme Court has concluded that the "inherent worth of speech ... does not depend upon the identity of its source, whether corporation, association, union, or individual." First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 777 [ ] (1978). Thus, for our purposes, the status of the Defendants as media or nonmedia is immaterial.

Snyder, 580 F.3d at 220 n.13.

Thus, in suits regarding an opinion statement made about a public figure or public official on a matter of public concern, the plaintiff must show that the statements were false and must prove that the defendant acted with actual malice. In these types of actions, the traditional common law presumption of damages for libel is replaced by the more difficult standard of proving that the author knew his opinion statement was false or recklessly disregarded its false implications. By "opinion," the court refers to statements that fail to contain a "provably false factual connotation." Snyder, 580 F.3d at 220 (citing Milkovich, 497 U.S. at 20). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 446 (4th Cir. 2004). "Whether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record." Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761 (1985).

By contrast, if the opinion is about a private figure and on a matter of public concern, the plaintiff must show that the statements were false and were made with "some level of fault" under Gertz, rather than that they were made with malice. Milkovich, 429 U.S. at 21. In Gertz, the Court found that the "accommodation of the competing values at stake in defamation suits by private individuals allows the States to impose liability on the publisher [ ] of defamatory falsehood on a less demanding showing than that required by New York Times." Gertz, 418 U.S. at 348 (emphasis added). The Court acknowledged that "under the traditional rule pertaining to actions for libel, the existence of injury is presumed from the fact of publication" and that "juries may award substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred." Id. at 349. Yet the Court pivoted from this traditional rule in establishing that a private plaintiff suing about opinion statements made on a matter of public concern is not entitled to a presumption of damages but must prove actual damages in order to recover from the defendant. Id. at 350 ("[T]he private defamation plaintiff who establishes liability under a less demanding standard than that stated by New York Times may recover only such damages as are sufficient to compensate him for actual injury."); see also Floyd v. WBTW, 2007 WL 4458924 at * 3 (D.S.C. Dec. 17, 2007) (requiring a private figure plaintiff "to plead and prove common law malice, demonstrate the falsity of the statements, and show actual injury in the form of general or special damages") (citing Erickson, 368 S.C. at 475–76). The private-figure plaintiff bringing a defamation suit for opinion statements made on a matter of public concern need only prove actual malice if he seeks punitive damages. Id. ("[T]he strong and legitimate state interest in compensating private individuals for injury to reputation

. . . extends no further than compensation for actual injury . . . States may not permit recovery of presumed or punitive damages [absent] a showing of knowledge of falsity or reckless disregard for the truth.").

Because the court finds below in section III.B.ii that several of Hennelly's allegedly defamatory statements are inactionable as rhetorical hyperbole, the court focuses its analysis in this section on the remaining statements. The two remaining defamatory statements are that McGlothlin gave the corrupt Governor McDonald of Virginia's wife a "no show" job, and that McGlothlin, as an owner/operator of United, engaged in documented corruption relating to a highly publicized scandal involving the Governor of Virginia and his wife. The court finds that Hennelly's contention that McGlothlin gave the governor's wife a "no show" job is not so much a statement of fact as it is a personal opinion deriving from his statement that McGlothlin engaged in documented corruption relating to the scandal that surrounded the Governor of Virginia. However, as this statement reads more as an actionable opinion than an inactionable rhetorical hyperbole, the court considers it in conjunction with Hennelly's statement regarding McGlothlin's involvement in documented corruption with the Governor.

Applying the New York Times / Milkovich / Gertz standard, the court views these statements as opinions related to matters of local public concern, specifically because they were made (1) in a comment to an online article regarding McGlothlin's business and his attempts to rezone Hilton Head National and (2) in a Facebook post issued the day after the Beaufort County Council denied the Rezoning Application, in which Hennelly summarizes his thoughts on the rezoning effort and on the people involved. The Rezoning Application was publicly known and was voted on by the Council after

14

public meetings with members of the community who were given the opportunity to voice their concerns. Clearly, one of Hennelly's concerns was that the man behind the company reportedly had some ethical shortcomings, which could reasonably affect the public's view of the Rezoning Application.

The court must next determine whether the plaintiff is a public figure or a private figure. If the court finds that McGlothlin is public figure, or even a limited-purpose public figure, then McGlothlin must prove that Hennelly posted all of these statements with actual malice—with knowledge that the statements were false or with reckless disregard to their falsity. The Fourth Circuit has offered the following test to help courts determine whether a plaintiff is a limited-purpose public figure:

> (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in a public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statements; and (5) the plaintiff retained public figure status at the time of the alleged defamation.

Fitzgerald v. Penthouse Int'l, Ltd., 691 F.2d 666, 668 (4th Cir. 1982). Given that this question is before the court upon a motion to dismiss, constraining the court to consider only the facts alleged in the complaint or contained within the documents attached to the complaint or referenced therein, the court needs more facts outside of those alleged in these documents to determine with proper certainty whether McGlothlin is a public figure. This is a question more appropriate for a summary judgment motion after discovery has been conducted.

Even presuming that the court finds McGothlin to be a private figure plaintiff, because these allegedly defamatory statements involve a matter of public concern, McGlothlin is foreclosed by Gertz from obtaining any relief beyond actual damages

unless he proves that Hennelly acted with actual malice regarding the falsity of the statements. The court suspects that a jury would likely find that Hennelly did not act with actual malice in regards to these statements. On the contrary, the Washington Post Article could easily allow a jury to determine that Hennelly reasonably believed that his statements were true. However, McGlothlin has alleged that Hennelly "engaged in [ ] defamatory conduct as to [McGlothlin], intentionally making and publishing false statements concerning [McGlothlin], with the intent to harm his reputation, or alternatively, making and publishing such statements with reckless disregard for the truth . . . so as to lower [his] reputation in [ ] the community." ECF No. 1 ¶ 11. Thus, the court finds that he has sufficiently alleged actual malice for purposes of surviving a motion to dismiss.

The other important result of this First Amendment analysis is that, if McGlothlin were found to be a private plaintiff, he must prove that the statements are false and that he suffered harm in order to collect actual damages. Ordinarily under South Carolina defamation law, the fact that the statements are libel would qualify them as actionable per se, which removes the requirement that that the plaintiff prove that he suffered general damages. However, the Gertz / Milkovich First Amendment standard reasserts this requirement that McGlothlin prove his actual damages, despite South Carolina common law not requiring this for actionable per se defamatory statements. McGlothlin's complaint alleges that Hennelly's statements have injured his business and his reputation in the community, that he has suffered "injured feelings, mental suffering and anguish, and personal and public humiliation," and finally that he has "suffered damages, including but not limited to, lost opportunities, diminished sales and trade relations, and

harm to his goodwill associated with his ongoing business and reputation in the community." ECF No. 1 ¶¶ 22, 23, 34, and 35.  The court again finds these allegations sufficient to survive a motion to dismiss, given that the specific details supporting these alleged harms might be produced during discovery.

In conclusion, the court is unable to dismiss McGlothlin's entire complaint at this stage of the litigation based on the above First Amendment framework.  The court will revisit this question should the parties choose to bring a motion for summary judgment.

### ii. Rhetorical Hyperbole

The court next considers whether some of Hennelly's allegedly defamatory statements are inactionable due to their rhetorical and hyperbolic nature.  Gertz, Milkovich, and subsequent Fourth Circuit case law has carved out greater protections for "statements that cannot reasonably be interpreted as stating actual facts about an individual." Milkovich, 497 U.S. at 20.  In Milkovich, the Supreme Court made clear that Gertz was not "intended to create a wholesale defamation exemption for anything that might be labeled 'opinion.'" Id. at 18.  However, the Court did make clear that it wished to provide "assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." Id. at 20.  As the Fourth Circuit reiterated, "[t]he general tenor of rhetorical speech, as well as the use of 'loose, figurative, or hyperbolic language' sufficiently negates any impression that the speaker is asserting actual facts." Snyder, 580 F.3d at 220 (citing Milkovich, 497 U.S. at 21); see also CACI Premier Tech., Inc. v. Rhodes, 536 F.3d 280, 300 (4th Cir. 2008) (finding that defendant's statements that plaintiffs were "mercenaries" and "killers" and that those involved could "do any damn

thing you want to, including torture people" was a clear use of hyperbole and exaggeration, and were thus not actionable); <u>Agora, Inc. v. Axxess, Inc.</u>, 90 F. Supp. 2d 697, 702 (D. Md. 2000), aff'd, 11 F. App'x 99 (4th Cir. 2001) (finding that statements that the plaintiff does not engage in "real" reporting, but rather conducts only "pseudo research" and "mere puffery" was not capable of a defamatory meaning because they "cannot reasonably be interpreted as stating actual fact"). Courts must assess "as a matter of law whether speech contains rhetorical hyperbole protected by the First Amendment." <u>Id.</u>

The court finds that Hennelly's statements that McGlothlin is a "crony capitalist," a "crook," and a "crooked owner" are all rhetorical hyperbole. They are not capable of being proven false or even properly defined. And the "general tenor" of these statements in the context of a Facebook post and a long, emotive comment on a newspaper article "negates any impression that the speaker is asserting actual facts" in regards to these particular statements. The court concludes that these rhetorical statements in the Island Packet Comment and May 23 Facebook Post warrant First Amendment protection and that McGlothlin may not base his claims on these statements going forward. The only remaining statements upon which McGlothlin may continue his defamation suit, therefore, are Hennelly's statement that McGlothlin "as owner / operator of United, engaged in documented corruption, relating to a highly-publicized scandal involving the Governor of Virginia and his wife" and his related statement that McGlothlin "gave the corrupt Governor McDonald of Virginia['s] [sic] wife a 'no show' job." ECF No. 1 ¶ 14.

### iii. Opinions Based on Disclosed Facts

Hennelly asks the court to view his use of the phrase "documented corruption" and "no show job" as his "reasonable interpretation of widely report facts" and thus "not actionable." ECF No. 29 at 11. However, all of the law that Hennelly cites for the "well-established" proposition that "opinions based on disclosed facts are protected" involve situations where the defamatory statement is made in conjunction with the disclosed facts. Id. (quoting Agora, 90 F.Supp. at 704). In Agora, the publisher of the defamatory statements disclosed the facts upon which this opinion was based on the very same website where the defamatory opinion statements were made. Agora, 90 F.Supp. at 704. Hennelly also cites Biospherics Inc. v. Forbes, Inc., 151 F.3d 180 (4th Cir. 1998), which involved an article about the Biospherics company and about the misplaced "[h]ype and hope" regarding this company. Biospherics, Inc., 151 F.3d at 184. The article also said that that "[i]nvestors will sour on Biospherics when they realize that [the product] isn't up to the company's claims" and that "its stock is worth $2." Id. The Fourth Circuit found that these statements were protected by the First Amendment because the article also reported its factual bases for these statements—that the cost of Biopsherics' sweetener would be five times more costly than sugar and that other companies were working on cheaper sweeteners. Id. The court found the allegedly defamatory statements to merely be the author's interpretation of the facts that the author disclosed, and Biospherics did not contest the truth of these underlying facts. Id. In Chapin v. Knight-Ridder,Inc., 933 F.2d 1087 (4th Cir. 1993), another case cited by Hennelly, the court considered whether an article's allegation that a charity engaged in "hefty mark-ups" constituted actionable defamation. The court found that "'[h]efty' is the author's opinion of the mark-up based

on his estimate that the wholesale cost of the items in the Gift Pac was under $8" and that "[b]ecause the bases for the 'hefty mark-up' conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." Chapin, 933 F.2d at 1093; see also Standing Comm. v. Yagman, 55 F.3d 1430, 1438–42 (9th Cir. 1995) ("[W]here a publication sets forth the facts underlying its statement of opinion . . . and those facts are true, the Constitution protects that opinion from liability for defamation.") (emphasis added).

In contrast to these cases, Henelly's statements in the Island Packet Comment and the May 23 Facebook Post were not made in conjunction with the facts which Hennelly now claims formed the bases for his opinions. The court recognizes that his statements regarding McGlothlin's engagement in documented corruption with the Governor of Virginia and giving the Governor's wife a "no show" job could reasonably be viewed as his interpretation of the facts laid out in the Washington Post Article. However, these statements were not made in conjunction with the facts from the Washington Post Article. If Hennelly had made these statements alongside his May 12 Facebook Post, which included the Washington Post Article, then they would not have been actionable. In that case, the Washington Post Article would have provided all of the facts upon which these two comments were made, and the reader could easily have interpreted them as Hennelly's interpretation of this article. However, the Island Packet Comment is not at all connected to the Washington Post Article, and the Island Packet Article itself does not sufficiently provide the factual basis for Hennelly's comments. The court considered whether Hennelly's May 23 Facebook Post was sufficiently close in time and proximity to the May 12 Facebook Post which included Washington Post Article, in a way that

would allow the reader to rely on the facts in the Washington Post Article when reading Hennelly's May 23 Facebook Post. The court was not provided with any evidence that the two Facebook posts were adjacent to one another to allow such a reading. More importantly, as discussed above, when courts have found that a statement is an inactionable opinion based on disclosed facts, those "facts" were actually disclosed within the same statement—they were written in the same article or existed within the confines of the allegedly defamatory statement. Here, by contrast, the facts in the Washington Post Article were not "disclosed" in the May 23 Facebook Post. The disclosure of the Washington Post Article occurred in a separate Facebook post from Hennelly's statements in the May 23 Facebook Post. Thus, a reader could have viewed Hennelly's May 23 Facebook Post with the allegedly defamatory statements without the benefit of seeing the Washington Post Article, and thus without being able to view Hennelly's statements as mere interpretations of the facts in the Washington Post Article.

The Island Packet Comment and the May 23 Facebook Post did not disclose the facts upon which they were based, and "an unsupported statement of opinion that implies defamatory facts can be actionable." Moldea v. New York Times Co., 15 F.3d 1137, 1144 (D.C. Cir.), modified, 22 F.3d 310 (D.C. Cir. 1994). Thus, the court declines to dismiss the complaint on the grounds that Hennelly's statements were mere interpretations of disclosed facts.

### C. Negligence Claim

In addition to his defamation causes of action, McGlothlin alleges the same facts and issues in the form of a negligence claim for his third cause of action. "A claim that a statement constitutes libel or slander must be brought in a defamation cause of action,

which is grounded in and affected by both common and constitutional law." <u>Erickson v.</u> <u>Jones St. Publishers, LLC</u>, 629 S.E.2d 653, 673–74 (S.C. 2006) (affirming the lower court's dismissal of the plaintiff's negligence cause of action). Thus, the court dismisses McGlothlin's negligence cause of action.

### IV.   CONCLUSION

Based on the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 1, 2019**
**Charleston, South Carolina**